**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS, LLC, | § | Civil Action No.: 6:10-cv-00379-LED |
| | § | |
| Plaintiff, | § | Before the Honorable Leonard Davis |
| | § | United States District Judge |
| v. | § | |
| | § | |
| T-MOBILE USA, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**DEFENDANT D-LINK SYSTEMS, INC.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

## I.      INTRODUCTION

Pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure ("Rule"),

Defendant D-Link Systems, Inc. ("D-Link Systems"), moves the Court for an Order Dismissing

the October 5, 2010 Second Amended Complaint (Docket # 69) ("SAC") of Plaintiff EON Corp.

IP Holdings, LLC ("EON").

With respect the Rule 12(b)(6) Motion, in its SAC, EON casts a single, spare,

conclusory, and legally deficient spear toward the vicinity of D-Link Systems.  EON's attempt at

an allegation relies on an indirect patent infringement legal theory, but fails because it neglects

to allege direct infringement, fails to identify an accused product of or action by D-Link

Systems, and relies solely on conclusory language in violation of Supreme Court precedent.  To

obtain relief on its indirect patent infringement claim, EON must allege facts that demonstrate

someone infringes its patent and that D-Link Systems has done something that contributed to or induced such infringement. But no such facts are alleged.

With respect to the Rule 12(b)(1) Motion, D-Link Systems joins in the Motion of Defendant Alcatel-Lucent USA Inc. to Dismiss EON's Plaintiff's SAC, pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, because EON is not the assignee of the patent in suit and therefore lacks standing to sue for patent infringement.

## II.    EON'S PLEADING

EON's sole patent infringement allegation relating to D-Link Systems is as follows:

> 33. D-Link makes, sells, offers for sale or imports UMA related network equipment (e.g., wireless routers) for use with one or more communication networks configured in accordance with one or more apparatus claims of the '491 Patent or operating in accordance with one or more method claims of the '491 Patent. D-Link thereby participates in joint infringement, contributory infringement, or inducement to infringe with operators or users of the communication networks.

*See* SAC, ¶ 33.  The pertinent putative allegation is that D-Link Systems supplies "UMA related network equipment[1] (e.g., wireless routers) for use with one or more communication networks configured in accordance with" the claims of the patent-in-suit, U.S. Pat. No. 5,592,491 ("the '491 Patent").  EON does not accuse D-Link Systems of directly infringing that patent, but, instead, expressly accuses D-Link Systems of indirect infringement by participation "in  joint infringement, contributory infringement, or inducement to infringe with operators or users of the communication networks."  However, EON neither explains what "communication networks" are involved, nor who the "operators or users" of such networks are, nor what D-Link Systems

---

[1]      The acronym "UMA" is defined in paragraph 25 of the SAC as "Unlicensed Mobile Access".  Neither "UMA" nor "Unlicensed Mobile Access" appear in the '491 Patent.

did to induce or contribute to infringement, nor how D-Link Systems had the requisite

knowledge and intent to support these legal theories, nor whether D-Link Systems' "wireless

routers" lack substantial non-infringing uses.

The recitations relating to D-Link Systems in EON's SAC are even more sketchy and

vague than those of its original, August 4, 2010 Complaint (Docket No. 1) ("Original

Complaint"), which were as follows:

> 33. D-Link makes, sells, offers for sale or imports UMA related
> network equipment (e.g., **model TM-G5240** wireless router**[s]**) for
> use with one or more communication networks configured in
> accordance with one or more apparatus claims of the '491 Patent
> or operating in accordance with one or more method claims of the
> '491 Patent.  D-Link thereby participates in joint infringement,
> contributory infringement, or inducement to infringe with
> operators or users of the communication networks.

*See* Original Complaint, ¶ 30 (emphasis added).  The differences between the Original

Complaint and the SAC[2] are shown in bold.  Thus, EON's Original Complaint identified a D-

Link Systems "wireless router" (singular), but the SAC removed this identification and EON cast

its accusing spear at all "wireless routers" (plural).

EON's complaints attached copies of the '491 Patent as an exhibit.  *See*, *e.g.*, Exhibit A

to the SAC (Docket No. 70).  The '491 Patent is directed toward a "an interactive two-way data

service network, and more particularly, to communication within an interactive two-way

broadcast data service network."  *See* the '491 Patent, at 1:11-14.  Further, an object of the

purported invention of the '491 Patent is "to provide a system to enable communications

---

[2]    EON's August 26, 2010 First Amended Complaint (Docket No. 7) added
defendants but did not change any statements in connection with D-Link Systems from the
Original Complaint.

between a subscriber unit and a local base station repeater cell in areas where such

communication has previously been impaired". *Id.*, at 2:15-18 ("Disclosure of Invention").

According to the '491 Patent, this object "has been achieved using a modem which is used to

enable communications between a subscriber unit and a local base station repeater cell when the

subscriber units are unable to receive rf transmissions from the local base station repeater cell."

*Id.*, at 2:23-28.

As reflected in the Disclosure of the Invention and the claims of the '491 Patent, there are

at least three components in the purported invention: (I) "a subscriber unit", (ii) "a local base

station repeater cell", and (iii) a "modem." These components are illustrated in Figure 2 of the

'491 Patent. The '491 Patent describes Figure 2 as showing "a communication system including

a modem 22 for enabling communication between a local base station repeater cell 10 and a

subscriber unit 12" (*id.*, at 3:32-35), and further elaborates that "the present invention provides

for two-way communication between local base station repeater cell 10 and subscriber unit 12

even if subscriber unit 12 is unable to receive rf signals directly from local base station repeater

cell 10". *Id.*, at 4:24-28.

The three components, "subscriber unit", "local base station repeater cell", and

"modem", and the communication between them are reflected in each of the five independent

claims in the '491 Patent, claims 1, 5, 12, 13, and 17. Claim 1 is an apparatus claim directed to a

"two-way communication network" and recites, *inter alia*, "subscriber units", "local base station

repeater cell", and "a modem communicatively coupled to said local subscriber units and said

local base station repeater cell". *Id.*, at 6:16-64. Claim 1 also recites components for

"transmitting to a set of said subscriber units" and "receiving and processing data messages from

said set of local subscriber units", and further specifies that the modem is"transferring ... data

messages ... between said set of local subscriber units and said local base station repeater cell".

*Id.* Claim 5 is a "method of communicating between subscriber units and a local base station

repeater cell", which also recites, *inter alia*, limitations involving communications between a

"subscriber unit", a "local base station repeater cell", and a "modem." *Id.*, at 7:7-43. The

remaining independent claims, claim 12 ("digital cellular communications system"), claim 13

("two-way communications system"), and claim 17 ("method of communicating between a

subscriber unit and a network hub switching center in two-communication system"), are

similarly directed toward the structure or methods for communication between a subscriber unit,

a local base station repeater cell[3] and a modem. *Id.*, at 8:11-35; 8:36-43; and 8:65-9:29.

## III.   ARGUMENT

### A.   LEGAL STANDARD FOR A RULE 12(b)(6) MOTION

Rule 12(b)(6) provides that "a party may assert the following defenses by motion: ... (6)

failure to state a claim upon which relief can be granted". D-Link Systems brings this Motion

under Rule 12(b)(6) challenging the sufficiency of EON's SAC. According to Rule 8(a), a well

pled complaint must contain a "short and plain statement of the claim showing that the pleader is

entitled to relief". In its 2007 decision, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007), leading up to the, now renowned *Ashcroft v. Iqbal*, --- U.S. ----,

129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) decision, the Supreme Court held that a complaint must

state "enough facts to state a claim to relief that is **plausible on its face**." *Twombly*, 550 U.S. at

---

[3]      Claim 12 uses the terms "subscriber unit" and "modem," but instead of explicitly
saying "local base station repeater cell," it refers to "a cell site communication system including
a digital transmitter" and "a set of receive only digital receivers."

570 (emphasis added).  In *Iqbal*, the Supreme Court revisited *Twombly* and elaborated on the

facial plausibility requirement, stating that it asks for "more than a sheer possibility that a

defendant has acted unlawfully" .  *Iqbal*, 129 S.Ct. at 1949.

The Supreme Court articulated a two-step process for determining whether a complaint

meets this plausibility standard.  First, the court identifies allegations that are not entitled to an

assumption of truth, because they are no more than conclusions.  *Id.*, 129 S.Ct. at 1951.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  Although the pleading requirements of Rule 8 mark "a notable and

generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.*,

129 S.Ct. at 1950.

Second, where well-pled factual allegations are found, the court should assume their truth

and then determine whether they plausibly give rise to an entitlement to relief.  *Id.*, 129 S.Ct. at

1951.  Determining whether a complaint's allegations satisfy the facial plausibility requirement

is "a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense."  *Id.*, 129 S.Ct. at 1950.  If the well-pled allegations merely infer the possibility

of misconduct, the complaint has failed to show that the pleader is entitled to relief and,

therefore, should be dismissed.  *Id.*

Although the general rule is that a court should not consider any material beyond the

pleadings in motion to dismiss, the Fifth Circuit has recognized an exception, where documents

are referred to in the plaintiff's complaint and are central to the plaintiff's claims.  *See Scanlan v.*

*Tex as A & M University*, 343 F.3d 533, 536 (5th Cir.2003); *see also Texas Advanced*

*Optoelectronic Solutions, Inc. v. Intersil Corp.*, 2009 WL 3157473 (E.D.Tex., 2009) (applying

*Iqbal* to the plaintiff's contract, trade secret, and tortious interference with prospective relations

claims).  As noted above, in this case, EON attached a copy of the patent-in-suit as an exhibit to

its various complaints, including the SAC.

      In this patent infringement case, several other rules are pertinent.  Direct infringement is

a prerequisite to an indirect inducement claim under 35 U.S.C. §271(b).  *Alloc, Inc. v. Int'l Trade*

*Comm'n*, 342 F.3d 1361, 1374 (Fed.Cir. 2003); *C.R. Bard, Inc. v. Advanced Cardiovascular*

*Sys., Inc.*, 911 F.2d 670, 675 (Fed.Cir.1990) (a "person induces infringement under § 271(b) by

actively and knowingly aiding and abetting another's direct infringement").  Direct infringement

is also a prerequisite to a contributory infringement claim under 35 U.S.C. §271(c).  *Cross Med.*

*Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed.Cir.2005).  With

respect to infringement by inducement,"[i]nducement requires a showing that the alleged inducer

knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to

encourage another's infringement of the patent."  *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d

1317, 1328 (Fed.Cir.2009); *see DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304

(Fed.Cir.2006) (*en banc* in relevant part).  With respect to contributory infringement, "in

addition to proving an act of direct infringement, plaintiff must show that defendant 'knew that

the combination for which its components were especially made was both patented and

infringing' and that defendant's components 'have no substantial non-infringing uses.' "  *Lucent*

*Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed.Cir.2009) (quoting *Cross Med. Prods.*,

424 F.3d at 1312).

      **B.**     **EON'S COMPLAINT FAILS TO SATISFY THE PLEADING**
                **STANDARDS OF *IQBAL***

EON's SAC fails to satisfy the standards set by *Iqbal* for its indirect patent infringement claim against D-Link Systems.  A similarly defective complaint was dismissed by this Court in *Eolas Technologies, Inc. v. Adobe Systems, Inc.*, 2010 WL 2026627, * 3 (E.D.Tex., May 6, 2010) (Davis, J.), because the complaint failed to include an allegation identifying "a direct infringer in relation to its indirect infringement claims."  *Id.*, citing *PA Advisors v. Google Inc.*, 2008 WL 4136426, at *8 (E.D.Tex. Aug.8, 2008) (Folsom, J.), and *Fotomedia Techs., LLC v. AOL*, LLC, 2008 WL 4135906 (E.D.Tex. Aug.29, 2008) (Everingham, Mag.).  Here, EON's SAC conspicuously fails to allege a direct infringer or even a suggestion of direct infringement.

Moreover, with respect to D-Link Systems, EON's SAC relies on alternative language and therefore does not affirmatively specify which of "joint infringement, contributory infringement, or inducement to infringe" it is setting forth, nor does the SAC specify the role of the mysterious and unidentified "operators or users".  *See* SAC, ¶ 33.  This failure even to set forth a theory is inexcusable under the pleading requirements of Rule 8: "The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions before discovery has even begun."  *Bedrock Computer Technologies, LLC v. Softlayer Technologies, Inc.*, 2010 U.S. Dist. LEXIS 62711, at *10 (E.D. Tex. Mar. 29, 2010) (Davis, J.) (quoting *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) (Davis, J.).

In its SAC, EON makes but one passing wave at the fleeting specter of a fact, mentioning "wireless routers" as "network equipment" that might be "configured in accordance" with a claim of the '491 Patent.  *See* SAC, ¶ 33.  This is precisely the type of barebones recital that is facially deficient because it does not contain "sufficient factual matter, accepted as true, to state

a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citations omitted).  Even

if taken as true, the assertion merely affirms that D-Link Systems is not a direct infringer, as D-

Link Systems' "wireless routers" are merely a device "for use with" unspecified

"communications networks".  EON thereby fails to identify any direct infringer and, due to the

nature of the '491 Patent, EON cannot identify a direct infringer.  In addition, EON does not

even allege that D-Link Systems had knowledge of the patent-in-suit, a prerequisite for indirect

infringement by inducement or contributory infringement.  *See Vita-Mix*, 581 F.3d at 1328

(inducement requires "alleged inducer knew of the patent"); *Aro Mfg. Co. v. Convertible Top*

*Replacement Co.*, 377 U.S. 476, 488 (1964) (contributory infringement requires knowledge that

the combination was patented).  And, finally, EON's SAC fails even to identify an accused

product, inasmuch as the product specifically identified in its Original Complaint was deleted

from its SAC, leaving EON's sting directed generally at "wireless routers".  In this instance, the

SAC Complaint fails even to satisfy even the most basic standard, no less the more rigorous

requirement set by *Iqbal.*

## IV.    CONCLUSION

EON failed to identify a direct infringer, failed to plead any factual allegation that D-

Link Systems had the requisite knowledge of the patent-in-suit, failed to allege a coherent legal

theory, and failed even to identify an accused product or act.  EON has therefore failed to state a

claim upon which relief can be granted and D-Link Systems respectfully requests that EON's

claims against D-Link Systems be dismissed.

Respectfully submitted,        By:       <u>    /s/Trey Yarbrough        </u>
                Trey Yarbrough

COUNSEL FOR DEFENDANT
D-LINK SYSTEMS, INC.

Herbert A Yarbrough, III
trey@yw-lawfirm.com
YARBROUGH WILCOX, PLLC
100 East Ferguson, Suite 1015
Tyler, Texas 75702
Tel: (903) 595-3111; Fax: (903) 595-0191

Duncan Palmatier (admitted *pro hac vice*)
dpalm@dpalmlaw.com
S.J. Christine Yang (admitted *pro hac vice*)
cyang@sjclawpc.com
THE LAW OFFICES OF S.J. CHRISTINE YANG
17220 Newhope Street, Suite 101
Fountain Valley, California 92708
Tel: (714) 641-4022; Fax: (714) 641-2082

Lawyers for Defendant,
      D-link Systems, Inc.

## CERTIFICATE OF SERVICE

I certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document and the attached proposed order via the Court's CM/ECF system, pursuant to Local Rule CV-5(a)(3) on this day.  I am not aware of any counsel of record who is not able to receive the document via the Court's CM/ECF system.

DATED:        October 29, 2010                 By:        /s/Trey Yarbrough
                                                                        Trey Yarbrough