UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| EON CORP. IP HOLDINGS, LLC, | |
| Plaintiff, | CIVIL ACTION NO. 6:10-cv-379-LED |
| v. | **JURY TRIAL REQUESTED** |
| T-MOBILE USA, INC., ET AL., | |
| Defendants. | |

**DEFENDANT-COUNTERCLAIMANTS CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC'S JOINT OPPOSITION TO EON'S MOTION TO DISMISS DEFENDANTS' INEQUITABLE CONDUCT COUNTERCLAIMS AND STRIKE THEIR INEQUITABLE CONDUCT AFFIRMATIVE DEFENSES**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.   STATEMENT OF FACTS ................................................................................................. 3

III.  ARGUMENT ...................................................................................................................... 5

    A.    THE MOTION IS PROCEDURALLY IMPROPER AND SHOULD BE DENIED .................. 5

    B.    IP HOLDINGS APPLIES THE WRONG PLEADING STANDARD ..................................... 8

    C.    DEFENDANTS' PLEADINGS SATISFY THE *EXERGEN* STANDARD AND ADDRESS
        *THERASENSE* REQUIREMENTS ............................................................................. 10

        1.    Defendants' Pleadings Meet the "Who" Requirement of *Exergen* ........... 11

        2.    Defendants' Pleadings Meet the "What" and "Where" Requirements of
            *Exergen* ............................................................................................... 11

        3.    Defendants' Pleadings Meet the "Why" and "How" Requirements of
            *Exergen* ............................................................................................... 13

IV.   CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

## Cases

*Arthrocare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp. 2d 638 (D. Del. 2004)................................................................................................................ 14

*Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998) ............................................. 15

*Clear With Computers, LLC v. Hyundai Motor America*, No. 6:09-CV-379, 2010 WL 3155775 (E.D. Tex. Mar. 29, 2010) (Davis, J.) ................. 6

*Delano Farms Co., et al., v. California Table Grape Comm'n, et al.*, No. 2010-1546, 2011 WL 3689247 (Fed. Cir. Aug. 24, 2011)........................ 9

*Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312 (Fed. Cir. 2009) ........................... passim

*Johnson Outdoors Inc. v. Navico, Inc.*, 774 F. Supp. 2d 1191 (M.D. Ala. 2011)................................................................................................... 7, 9, 15

*Konami Digital Entm't Co. v. Harmonix Music Sys., Inc.*, No. 6:08-cv-00286, 2009 WL 5061812 (E.D. Tex. Dec. 14, 2009) (Love, J.)............................. 9, 11, 12, 14

*MacLean-Fogg Co. v. Eaton Corp.*, Case No. 2:07-cv-472 (Apr. 7, 2008) (Davis, J.) ............................................................................................... 10, 12

*Pfizer Inc v. Teva Pharm. USA, Inc.*, No. 2:10-cv-128, 2011 WL 3563112 (E.D. Va. Aug. 12, 2011) ........................................................................ 9, 10

*Raytheon Co. v. Indigo Systems Corp.*, No. 4:07-cv-109, 2008 WL 5422874 (E.D. Tex. Dec. 29, 2008) ...................................................... 6

*Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029 (5th Cir. 2010) ........................................................................ 9

*Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357 (Fed. Cir. 2008)............................................................................................................ 9

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011)......................................................................................................... 2, 3, 8

*Tivo Inc. v. Verizon Communications, et al.*, Case No. 2:09-cv-00257 (E.D. Tex. Sept. 7, 2011) (Fulsom, J.) ............................................... 2, 8, 9

*Versata Software, Inc. v. Sun Microsystems, Inc.*, CA No. 2:06-CV-358, 2009 WL 1084412 (E.D. Tex. Mar. 31, 2009).......................................... 6

## Federal Rules

Fed. R. Civ. P. 12(b) ................................................................................................ 1

Fed. R. Civ. P. 12(b)(6)......................................................................................... 1, 6

Fed. R. Civ. P. 12(c) ................................................................................................ 6

Fed. R. Civ. P. 12(d) .............................................................................................. 2, 7

Fed. R. Civ. P. 12(f) ................................................................................................................ 1, 6

P.R. 3-3(c) ................................................................................................................................. 12

## I.       INTRODUCTION AND SUMMARY OF ARGUMENT

EON Corp. IP Holdings, LLC's ("IP Holdings") re-urged Motion to Dismiss Defendants' Inequitable Conduct Counterclaims and Strike Their Inequitable Conduct Affirmative Defenses (the "Motion") (Dkt. No. 488) is fraught with many of the same procedural and substantive errors that undermined IP Holdings' initial motion (the "Initial Motion") (Dkt. No. 367).  As detailed below, the Motion should be denied.

*First*, although fashioned as a motion to "dismiss" and "strike" Defendants' Pleadings, the Motion can be neither.  Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless")[1] and Samsung Telecommunications America, LLC ("STA" and, collectively with Verizon Wireless, the "Defendants") filed the challenged inequitable conduct answers and counterclaims on August 29, 2011.  *See* Dkt. Nos. 423, 427 ("Defendants' Pleadings").  IP Holdings answered days later—a month <u>before</u> it filed the Motion on October 3, 2011 (*see* Dkt. Nos. 441, 443).  Relief under Federal Rules of Civil Procedure (the "Rules") 12(b)(6) and 12(f) is therefore unavailable,[2] and the Motion must instead be one for judgment on the pleadings pursuant to Rule 12(c).

*Second*, the Motion further violates procedure by relying on evidence outside of Defendants' Pleadings, namely testimony from the Skytel Action that did not even involve the '491 Patent (*see e.g.*, Motion at 2, 11, 14).  The Motion also raises numerous issues of fact (*see e.g.*, *id.* at 10-11, 12, 14) in a misplaced (and legally erroneous) attempt to "prove" that

---

[1] IP Holdings incorrectly asserts that Verizon Wireless was a party to a previous action captioned *EON Corp. IP Holdings, LLC v. Verizon Clinton Center Drive Corp.*, Civ. Action No. 6:08-cv-00385 (E.D. Tex.)  (the "SkyTel Action"), which involved Patent No. 5,388,101 (the "'101 Patent"), of which the patent at issue in this case, Patent No. 5,592,491 (the "'491 Patent"), is a continuation-in-part.  *See* Motion at 1 n.2.  Verizon Wireless was not a defendant in the SkyTel Action and is a distinct and separate legal entity from the SkyTel Action Defendant Verizon Clinton Center Drive Corp. f/k/a SkyTel Corp. ("VCCDC").

[2] Relief under Rules 12(b)(6) and 12(f) is available only if a party moves before responding to the pleading that it challenges.  *See* Fed. R. Civ. P. 12(b), 12(f).

Defendants' allegations are incorrect.  Not only are IP Holdings' extrinsic evidence and fact-intensive arguments irrelevant at this stage, but—at a minimum—Defendants are entitled to discovery to refute them.[3]

*Third*, the Motion errs even more fundamentally by applying the wrong legal standard for assessing the sufficiency of Defendants' inequitable conduct Pleadings, asserting that Defendants are required, but have failed, to: (i) establish that deceptive intent is "the single most reasonable inference that can be drawn from the evidence" (Motion at 7, 14-15); and (ii) establish inequitable conduct by "clear and convincing evidence."  *Id.* at 4, 8, 13.  Both assertions were refuted by the Federal Circuit's decision in *Exergen*,[4] which draws a clear distinction between pleadings and proof at trial.  IP Holdings' misguided attempt to depart from the *Exergen* standard is premised on the unsupported contention that the Federal Circuit's recent decision in *Therasense*[5] has elevated the pleading standards.  In so arguing, however, IP Holdings barely acknowledges this Court's recent rejection of that very argument in *Tivo Inc. v. Verizon Communications, et al.*, Case No. 2:09-cv-00257 (E.D. Tex. Sept. 7, 2011) (Fulsom, J.), Dkt. No. 221 at 6 ("As noted in *Therasense*, *Exergen* remains the leading authority on the pleading standard for inequitable conduct.").  Arguing that this remains an unsettled issue in this District, IP Holdings vaguely refers to this Court's holding in *Tivo* as merely an opinion by "a second district court" that should be disregarded in favor of an opinion by a court from another district—which IP Holdings mischaracterizes as applying a heightened pleading standard.  *See* Motion at 6.  With respect to Defendants' infectious unenforceability allegations, IP Holdings again applies

---

[3] *See* Fed. R. Civ. P. 12(d).  Even if the Motion were converted to a Rule 56 motion, judgment in IP Holdings' favor would be inappropriate, given the myriad issues of fact presented by IP Holdings' arguments and the incomplete state of discovery.

[4] *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009).

[5] *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) .

the incorrect standard, insisting that Defendants are required, but have failed, to establish that the withheld reference is "material to the '491 Patent."  *Id*. at 3, 12-13.  IP Holdings is wrong.

As detailed herein, Defendants' Pleadings satisfy each of the "who, what, when, where, and how" pleading requirements set forth in *Exergen* and sufficiently plead inequitable conduct in accordance with the substantive law set forth in *Therasense*.  Defendants' Pleadings also satisfy the standard for infectious unenforceability.  The Motion should be denied.

## II.   STATEMENT OF FACTS

IP Holdings filed this action on August 4, 2010 (Dkt. No. 1) and amended its complaint to add Verizon Wireless on August 26, 2010.  Dkt. No. 7.  On November 4, 2010, Verizon Wireless specifically pled all aspects of its affirmative defense and counterclaim based on the unenforceability of the '491 Patent due to inequitable conduct.  Dkt. No. 148 (the "Initial Answer") ¶¶ 54-106.  IP Holdings answered Verizon Wireless' counterclaims on December 6, 2010, denying the allegations with respect to inequitable conduct, but never challenging their sufficiency under *Exergen*.  Dkt. No. 203.  That same day, Verizon Wireless responded to IP Holdings' third Amended Complaint, asserting identical inequitable conduct allegations as it had included in its Initial Answer.  Dkt. No. 200 ¶¶ 52-104, Fourth Counterclaim.  IP Holdings responded to this pleading on January 3, 2011, again denying Verizon Wireless' inequitable conduct allegations, without challenging their legal sufficiency under *Exergen*.  Dkt. No. 222.

On May 25, 2011, the Federal Circuit issued its opinion in *Therasense*, which addressed the standard of proof required to prove an inequitable conduct defense at trial, and further modified the definition of materiality, changing it from the "reasonable examiner" standard to "but-for" materiality.  *Therasense*, 649 F.3d at 1291.  By letter dated May 26, 2011, IP Holdings demanded that Verizon Wireless dismiss or amend its inequitable conduct defenses and counterclaims within fifteen days thereof or IP Holdings would move to strike Verizon Wireless'

affirmative defense and counterclaim.  *See* Exhibit ("Ex.") A (May 26, 2011 Letter from C. Jepson to Counsel for Verizon Wireless).[6]  Hoping to avoid needless motion practice, Verizon Wireless filed an amended answer on June 10, 2011 ("Verizon Wireless' Amended Answer") to specifically address the revised "but for" materiality standard, without conceding any obligation to do so.  *See* Dkt. No. 352 ¶¶ 52-93.  STA also filed its First Amended Answer and Counterclaims ("STA's Amended Answer") on June 10, 2011, which asserted an affirmative defense and counterclaim based on the unenforceability of the '491 Patent due to inequitable conduct.  Dkt. No. 353 ¶¶ 52-95.  IP Holdings answered both Defendants' counterclaims on July 5, 2011 (Dkt. Nos. 370, 371), and filed the Initial Motion the same day.[7]  Dkt. No. 367. Defendants opposed the Initial Motion on July 25, 2011.  Dkt. No. 376.

On August 10, 2011, IP Holdings filed its Fourth Amended Complaint (the "Complaint"), effectively mooting the Initial Motion.  Dkt. No. 394; *see also* Dkt. No. 402.  On August 29, 2011, both Verizon Wireless and STA answered the Complaint and each again asserted an affirmative defense and counterclaim based on the unenforceability of the '491 Patent due to inequitable conduct.  Dkt. Nos. 427, 423 (together, "Defendants' Pleadings").[8]  On September 2, 2011, IP Holdings answered Defendants' Pleadings, denying the allegations with respect to inequitable conduct, but never challenging their sufficiency under *Exergen*.  *See* Dkt. Nos. 441,

---

[6] References herein to "Ex." are to exhibits to the Declaration of Courtney A. Welshimer in support of this opposition.

[7] IP Holdings later acknowledged that its pleadings and motion were untimely.  Although this reflected a pattern of missed deadlines by IP Holdings, Defendants agreed not to oppose IP Holdings' *ex post facto* motion to extend the deadline for its pleadings.  Dkt. No. 388.

[8] The inequitable conduct allegations contained in Defendants' Pleadings differ only slightly from those included in Verizon Wireless' and STA's Amended Answers.  Although Defendants maintain that the inequitable conduct allegations included in their Amended Answers were sufficient to satisfy Rules 8(a) and 9(b), and *Exergen*, Defendants nevertheless amended their allegations slightly in an effort to avoid further motion practice on this issue.

443.  A month later, on October 3, 2011, IP Holdings filed the Motion.  Dkt. No. 488.

IP Holdings has been on notice of the substance of Defendants' inequitable conduct allegations since at least November 4, 2010—eleven months prior to the filing of the Motion—when Verizon Wireless specifically pled inequitable conduct in its Initial Answer.  *See* Dkt. No. 148 ¶¶ 54-106.[9]  The inequitable conduct affirmative defenses and counterclaims included in Defendants' Pleadings are based on identical facts and are substantially similar to those included in Verizon Wireless' Initial Answer, with only slight revisions to address, *e.g.*, the new "but for" materiality standard announced in *Therasense*.  *See* Dkt. Nos. 148 ¶¶ 54-106, 423 ¶¶ 78-121, 427 ¶¶ 78-113.  At no point between November 4, 2010 when Verizon Wireless first filed pleadings based on inequitable conduct and May 26, 2011 did IP Holdings complain about any alleged deficiencies in Verizon Wireless' Pleadings.  And, although IP Holdings again seeks to excuse its belated (and improper) challenge as premised on *Therasense*, the truth is that IP Holdings' arguments pertain to the same allegations that IP Holdings specifically responded to in answers filed on December 6, 2010 and January 3, 2011 in response to Verizon Wireless and Samsung's Pleadings, and to the same law governing pleadings (*Exergen*) that pre-dates this suit and continues to apply.

## III.  ARGUMENT

### A.  THE MOTION IS PROCEDURALLY IMPROPER AND SHOULD BE DENIED

For a second time, IP Holdings premises its request that the Court "dismiss" and "strike"

---

[9] The facts supporting Defendants' inequitable conduct allegations came to light in 2010 during the SkyTel Action, in which IP Holdings unsuccessfully moved to strike or dismiss inequitable conduct pleadings based on many of the same arguments it asserts anew in the Motion (*see* CA No. 6:08-cv-00385, Dkt. Nos. 432, 528, 539).  IP Holdings also argued—and the Court agreed—that genuine issues of material fact prevented the Court from granting summary judgment.  *See id.*, Dkt. Nos. 441, 564; *see also* Ex. B (Trans. Sept. 16, 2010 Hrg. before Judge Love) at 85:11-86:24, 87:7-88:21.

Defendants' inequitable conduct Pleadings on a vague assertion that it is entitled to relief under Rule 12, but leaves it to the Court and Defendants to guess the specific procedural basis upon which it asks this Court to act.  Because IP Holdings answered Defendants' Pleadings before it filed the Motion, neither Rule 12(b)(6) nor Rule 12(f)—both of which explicitly allow relief only upon a motion made <u>before</u> responding to the challenged pleadings—can serve as the basis for the Motion.  *See* Fed. R. Civ. P. 12(b)(6), 12(f); *see also* Dkt. Nos. 441, 443, 488.[10]  Thus, by default, the Motion must be one for judgment on the pleadings under Rule 12(c).  Fed. R. Civ. P. 12(c).  The same standard applies to motions made under Rule 12(c) as those under Rule 12(b)(6), the central issue being "whether, in the light most favorable to [the pleading party], the complaint [or counterclaim] states a valid claim for relief."  *Clear With Computers, LLC v. Hyundai Motor America*, No. 6:09-CV-379, 2010 WL 3155775, at *2 (E.D. Tex. Mar. 29, 2010) (Davis, J.).  When considering Rule 12(c) motions, "[p]leadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of material fact and only questions of law remain."  *Versata Software, Inc. v. Sun Microsystems, Inc.*, CA No. 2:06-CV-358, 2009 WL 1084412, at *1 (E.D. Tex. Mar. 31, 2009) (citations omitted).

Although a proper motion under Rule 12(c) would invite the Court to judge the sufficiency of Defendants' inequitable conduct <u>Pleadings</u>, IP Holdings again disregards procedure by relying heavily on evidence outside the Pleadings, insisting that deposition testimony of named inventor, Gilbert Dinkins, from the unrelated SkyTel Action refutes

---

[10] If IP Holdings intended to move to strike under Rule 12(f), its delay is even less excusable, given that it has been on notice of Verizon Wireless' inequitable conduct pleadings for over eleven months.  *See Raytheon Co. v. Indigo Systems Corp.*, No. 4:07-cv-109, 2008 WL 5422874 (E.D. Tex. Dec. 29, 2008) (denying motion to strike defenses that had "been in play" for months without plaintiff ever "complain[ing] of any shortcomings"); *Johnson Outdoors Inc. v. Navico, Inc.*, 774 F. Supp. 2d 1191, 1198 (M.D. Ala. 2011) ("The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim.").  As noted herein, IP Holdings cannot legitimately contend that its Motion is focused on new allegations or premised on new law.

Defendants' allegations. *See* Motion at 2, 11 n.5, 12, 14. First, even if IP Holdings were correct about the relevance of that testimony (and if it were proper to use such testimony against Defendants in this case, which it is not), it would create, at most, a fact issue for trial;[11] such testimony cannot provide a basis for a motion for judgment on the <u>pleadings</u>. But IP Holdings is also wrong on relevance: as IP Holdings' quotes confirm, Mr. Dinkins' prior testimony <u>did not relate to the relevance of the '878 Patent to the '491 Patent</u>, but rather addressed only his other patents—the '101 and '546 Patents, which were at issue in the Skytel Action. *See id.* at 11 n.5 (quoting Mr. Dinkins as testifying that, "[The '878 Patent] has nothing to do with <u>the '101, '546</u>. …") (emphasis added). IP Holdings creates further issues of fact by presenting extensive argument as to what the '878 Patent allegedly does and does not disclose—arguments that are likewise irrelevant to the sufficiency of Defendants' Pleadings. *See id.* at 10-12. This Court should reject IP Holdings' implicit attempt to deny Defendants discovery as to the relevance of the '878 Patent <u>to the '491 Patent</u>, which, as a continuation-in-part to the '101 Patent, included additional disclosures and a set of claims different from its parent.

Pursuant to Rule 12(d), "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment ..." Fed. R. Civ. P. 12(d). At this early stage of proceedings, consideration of matters outside the pleadings is premature and Courts are understandably hesitant to convert a motion under Rule 12 to one for summary judgment. *See e.g., Johnson Outdoors*, 774 F. Supp. 2d at 1198. Moreover, IP Holdings' continued reliance on such matters raises issues of fact sufficient to defeat a request for judgment on the pleadings or summary judgment.

---

[11] *See also* Note 9, *supra*.

### B.   IP HOLDINGS APPLIES THE WRONG PLEADING STANDARD

In the alternative, the Court should deny the Motion as based on an incorrect statement of the law and an improper application of the law to the facts.  In particular, ignoring this Court's contrary holding in *Tivo*, IP Holdings insists that Defendants' inequitable conduct allegations fail to satisfy the *Therasense* standard of proof and must be dismissed because deceptive intent is not the "single most reasonable inference" that can be drawn from Defendants' Pleadings.  Motion at 7, 14 ("Deceptive intent is not the single most reasonable inference that can be drawn from the pleaded facts."), 15 ("Defendants must plead facts plausibly leading to the single most reasonable inference of deceptive intent.").   Although this Court has already held that the *Therasense* standard is not appropriate for judging the sufficiency of pleadings under Rule 9(b), IP Holdings misstates even this standard, insisting that Defendants must plead facts that establish that the "only plausible, reasonable inference" is deceptive intent.  *See id*. at 1 n.2.  IP Holdings is similarly wrong in insisting that, to sufficiently plead inequitable conduct, Defendants must establish inequitable conduct by "clear and convincing" evidence.  *Id*. at 4, 8, 13.

As this Court recognized in *Tivo*, "[B]ecause the court [in *Therasense*] was reviewing a district court finding of inequitable conduct after a bench trial, *Therasense* did not address the pleading standard." *Tivo Inc.*, Dkt. No. 221 at 5.   Rather, the Federal Circuit in *Therasense* addressed the burden of proof an alleged infringer must satisfy in order to succeed in proving his or her claim at trial:

> To **prevail** on a claim of inequitable conduct, … **the accused infringer must prove by clear and convincing evidence** that the applicant knew of the reference, knew it was material, and made a deliberate decision to withhold it.
> . . .
> [T]o meet the **clear and convincing evidence standard**, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'

649 F.3d at 1290 (citing *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366

(Fed. Cir. 2008)) (emphases added). The Court in *Therasense* did not purport to revise the pleading requirements, leaving *Exergen* intact. *See Tivo*, Dkt. No. 221 at 6; *accord Delano Farms Co., et al., v. California Table Grape Comm'n, et al.*, No. 2010-1546, 2011 WL 3689247, at *10 (Fed. Cir. Aug. 24, 2011). As the Federal Circuit explained in *Exergen*, even if ultimate proof at trial requires proof by "clear and convincing evidence" that deceptive intent is the "single most reasonable inference" to be drawn from the evidence, Rule 9(b) is satisfied by pleadings that support a reasonable inference of deceptive intent. *See Exergen*, 575 F.3d at 1329 n.5;[12] *see also Konami Digital Entm't Co. v. Harmonix Music Sys., Inc.*, No. 6:08-cv-00286, 2009 WL 5061812, at *2 (E.D. Tex. Dec. 14, 2009) (Love, J.) ("The Federal Circuit teaches that these allegations need not be a 'smoking gun,' but rather sufficient grounds to infer the requisite knowledge and intent.").[13]

IP Holdings urges the Court to dismiss its own analysis of *Therasense*'s impact—or lack thereof—on *Exergen's* pleading standard in favor of what IP Holdings argues is the "more correct interpret[ation]" of *Therasense* set forth in an opinion issued by a district court in another circuit in *Pfizer Inc v. Teva Pharm. USA, Inc.*, No. 2:10-cv-128, 2011 WL 3563112 (E.D. Va. Aug. 12, 2011). Motion at 6. *Pfizer*, however, is not at odds with this Court's analysis in *Tivo*. In *Pfizer*, the court likewise concluded that "*Exergen* still states the correct elements required for pleading inequitable conduct after *Therasense*" (*id*. at *16), and then noted only that a party must

---

[12] Moreover, the authority on which IP Holdings relies in arguing that Defendants have not pled deceptive intent with sufficient particularity is inapposite. In *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, which involved allegations of fraud and fraudulent inducement in the context of a contract dispute, the Court concluded that plaintiff failed to satisfy Rule 9(b) because, *inter alia*, "[plaintiff] itself pleads evidence that counters fraudulent inducement not to perform." 607 F.3d 1029, 1034-35 (5th Cir. 2010) (emphasis added). Here, all of the facts pled by Defendants support their inequitable conduct allegations.

[13] *See also Johnson Outdoors*, 774 F. Supp. 2d at 1201 (defendant "need only allege enough underlying facts to give rise to a reasonable inference of deceptive intent—one that is plausible and flows logically from the facts as alleged").

make an initial showing from which it may be "plausibly inferred that (1) the individual knew of the information not disclosed; (2) [such information] was but-for material to the prosecution of the patent; and (3) the intent to deceive is the single most likely explanation for the non-disclosure." *Id.* at *15 (emphasis added). *Pfizer* does not hold, as IP Holdings asserts, that facts must be pled that support inequitable conduct as the "single most reasonable inference."

As noted further below, the challenged Pleadings amply satisfy the *Exergen* standard by pleading at least two fact patterns of "but for" material prior art that was withheld from the PTO by specifically identified persons, who had full knowledge of the materiality of those references and the consequences of their failure to disclose but deliberately withheld that prior art, thus supporting a reasonable inference of specific intent to deceive the PTO.

### C. DEFENDANTS' PLEADINGS SATISFY THE *EXERGEN* STANDARD AND ADDRESS *THERASENSE* REQUIREMENTS

The substantive elements of a claim based on inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO. *Exergen*, 575 F.3d at 1327 n.3. The "circumstances" that must be pled with particularity under Rule 9(b) are "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328. This Court has explained that the degree of particularity required under Rule 9(b) "is that which will give the opposing party *sufficient notice* to prepare an appropriate response." *MacLean-Fogg Co. v. Eaton Corp.*, Case No. 2:07-cv-472 (Apr. 7, 2008) (Davis, J.) (citations omitted) (denying motion to strike defendant's inequitable conduct allegations) (emphasis added).

1.      **Defendants' Pleadings Meet the "Who" Requirement of *Exergen***

*Exergen*'s "who" requirement is straightforward and IP Holdings does not contest that Defendants' Pleadings satisfy this requirement.   An inequitable-conduct pleading must identify specific individuals who owed a duty of candor to the PTO and breached that duty.  *See Exergen*, 575 F.3d at 1329; *see also Konami*, 2009 WL 5061812 at *2 (identifying specific prosecuting attorneys and inventors).  Defendants' Pleadings identify by name at least two such individuals: Mr. Dinkins, the sole listed inventor of the '491 Patent, who is alleged to have committed inequitable conduct with respect to his own earlier patent, U.S. Patent No. 4,659,878 (the "'878 Patent") (*see* Dkt. No. 427 ¶¶ 80, 84; Dkt. No. 423 ¶¶ 80, 84); and  Patrick King, the prosecuting attorney of the '491 Patent, who is alleged to have committed inequitable conduct with respect to an International Search Report ("ISR") for a PCT counterpart of the '101 Patent, WO 94/10803, and a material prior art reference cited therein, U.S. Patent No. 4,928,177 (the "Martinez Patent").   *See* Dkt. No. 427 ¶¶ 87, 100, 109; Dkt. No. 423 ¶¶ 106, 101.  Defendants have therefore satisfied the "who" requirement set forth in *Exergen*.

2.      **Defendants' Pleadings Meet the "What" and "Where" Requirements of *Exergen***

Defendants have also satisfied the "what" and "where" pleading requirements as stated by *Exergen*, which require Defendants to identify "which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *Exergen,* 575 F.3d at 1329.

Defendants have satisfied *Exergen*'s pleading requirements, in light of the substantive law set forth in *Therasense*, by pleading that the '878 Patent was "but-for" material to the patentability of the '491 Patent but was not disclosed to the PTO, and explicitly referred to and incorporated by reference into their Pleadings the claim charts that Defendants provided to IP

Holdings on April 29, 2011, along with Defendants' Joint Invalidity Contentions Pursuant to

Patent Rule 3-3 (the "Invalidity Contentions").  *See* Dkt. No. 427 ¶¶ 81-82; Dkt. No. 423 ¶ 81;

Ex. C (Exhibit B1 to Defendants' Joint Invalidity Contentions).   IP Holdings complains,

however, that Defendants claim charts "lack[] any explanation as to what particular claim

elements are disclosed and where specifically Defendants contend the disclosure is found."  *See*

Motion at 3, 9-10 (Defendants "do not make an element-by-element analysis as required by

*Exergen*.").  This complaint is without merit.[14]   Defendants' invalidity claim charts plainly

accomplish exactly that, and this Court has approved similar use of such charts.  *See Konami*,

2009 WL 5061812 at *2 ("The Court is similarly persuaded that Viacom has met the 'what' and

'where' requirements [of *Exergen*] with pleadings that identify charts of potentially invalidating

Konami prior art games-on a claim-by-claim and limitation-by-limitation basis.");  *see also* P.R.

3-3(c) (requiring invalidity contentions to include claim charts).[15]   To the extent IP Holdings

contests the substance of those charts, fact issues are presented that prevent summary resolution.

Defendants likewise satisfy the "what" and "where" requirements with respect to the

unenforceability of the '491 Patent under the doctrine of infectious unenforceability, which is

based on inequitable conduct committed during prosecution of the '101 Patent, of which the '491

Patent is a continuation-in-part.  Defendants have pled that at least one reference "but-for"

material to the prosecution of the '101 Patent—namely, the Martinez Patent—was known to Mr.

King because it was identified as a "Y" reference, denoting that it was prior art of "particular

---

[14]  Notably, IP Holdings lodged the same complaint in opposition to VCCDC's summary judgment motion and in support of its own unsuccessful motion to strike in the SkyTel Action. *See* CA No. 6:08-cv-00385, Dkt. No. 432 at 6; Ex. B (Trans. Sept. 16, 2010 Hrg. before Judge Love) at 87:7-11, 88:22-89:2.

[15]  IP Holdings' complaint that the claim charts are "not pleadings" fails because the primary function of the pleading requirements is to provide notice.  *See MacLean-Fogg Co. v. Eaton Corp.*, Case No. 2:07-cv-472 (Apr. 7, 2008) (Davis, J.).

relevance to obviousness," and further indicating that "the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more such documents being obvious to a person skilled in the art."  *See, e.g.* Dkt. No. 427 ¶¶ 86-109; Dkt. No. 423 ¶¶ 80-116.  Despite knowing of the Martinez Patent and its materiality, Mr. King never disclosed it to the PTO; rather, the Martinez Patent was considered by the PTO for the first time during *ex parte* reexamination of the '101 Patent when it was cited by a third party.  Dkt. No. 427 ¶ 74; Dkt. No. 353 ¶ 76.  The PTO agreed that it was highly material, rejecting all claims as anticipated or obvious, *inter alia*, over the Martinez Patent.  Dkt. No. 427 ¶ 103; Dkt. No. 423 ¶ 104.  The PTO's issuance of a final office action in the reexamination of the '101 Patent, rejecting Claims 19 and 20 of the '101 Patent, leaves no question that the Martinez Patent is "but-for material" to the '101 Patent.  Dkt. No. 427 ¶ 108; Dkt. No. 423 ¶ 115.

Defendants have satisfied *Exergen*'s "what" and "where" requirements with respect to both instances of inequitable conduct pled in Defendants' Pleadings.[16]

### 3. Defendants' Pleadings Meet the "Why" and "How" Requirements of *Exergen*

Defendants have also satisfied *Exergen*'s "why" and "how" requirements.  Pursuant thereto, allegations of inequitable conduct must explain "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims."  *Exergen*, 575 F.3d at 1329-30.

As noted *supra*, although the court in *Therasense* changed the definition of materiality

---

[16] In fact, IP Holdings all but concedes that it can reasonably be inferred from the facts pled by Defendants that Messrs. Dinkins and King acted with deceptive intent in failing to disclose the relevant patents.  *See* Motion at 14 ("At least equally plausible is that Mr. Dinkins believed the '878 Patent was irrelevant …"), *id*. ("Many reasonable inferences may account for the facts, including that Mr. King believed that the Martinez Patent was cumulative of the related Martinez '604 Patent he had disclosed.") (emphases added).

from the "reasonable examiner" standard to "but-for" materiality, it did not purport to change the pleading requirements under *Exergen.*   Nevertheless, Defendants have satisfied both *Exergen* and *Therasense* by pleading that "the information in the '878 Patent is 'but-for material' to the examination of the patent application that issued as the '491 Patent because the PTO would not have allowed one or more claims of the '491 Patent had it been aware of the '878 Patent."   Dkt. No. 427 ¶¶ 81-82; Dkt. No. 423 ¶¶ 81-83.   Defendants' invalidity claim charts explain in detail "how" and "why" the '878 Patent anticipates and/or renders obvious the '491 Patent, and was not cumulative.   *See* Ex. C; *see also Konami*, 2009 WL 5061812 at *2.   Defendants further have satisfied the "how" and "why" requirements by alleging that the PTO relied on the Martinez Patent in issuing a final rejection of claims of the '101 Patent during reexamination.   Dkt. No. 427 ¶¶ 102-08; Dkt. No. 423 ¶¶ 102-117.   The PTO's actions demonstrate that the Martinez Patent was necessarily noncumulative and "but-for" material to the '101 Patent.   Dkt. No. 427 ¶¶ 103-04; Dkt. No. 423 ¶¶ 104-05; *see also* Ex. D ('101 Patent Non-Final Office Action); Ex. E ('101 Patent Final Office Action).

With regard to Defendants' allegations of "infectious unenforceability," IP Holdings incorrectly insists that Defendants must allege an "immediate and necessary relation" between the reference withheld during prosecution of the parent patent and the <u>claims</u> in the child patent. Motion at 13.[17]   Not so.   As stated in *Arthrocare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp. 2d 638, 675 (D. Del. 2004), what is required ultimately to be proved is an "'immediate and necessary relation' between the alleged inequitable conduct and <u>enforcement</u> of the related patents." (emphasis added).   That relationship is met by Defendants' allegations, which rely on IP Holdings' belated claim of priority for the '491 Patent claims based on the '101 Patent.   If the

---

[17] This is plainly not a new requirement under any reading of *Therasense*, and was never raised by IP Holdings in response to any of Defendants' earlier pleadings.

'101 Patent is unenforceable, patents claiming priority to that patent must similarly fall.  *See Johnson Outdoors*, 774 F. Supp. 2d at 1201-02 (citations omitted) (finding sufficient pleading of unenforceability of continuation-in-part patent based on inequitable conduct committed during prosecution of parent patent).[18]  To require more—to require allegations that the Martinez Patent was also independently material to the '491 Patent itself, as IP Holdings suggests—would obviate the doctrine of infectious unenforceability.  But even if the Court were to accept IP Holdings' premise, Defendants' Pleadings already include sufficient allegations showing that the withheld Martinez Patent also bore an "immediate and necessary relation" to the claims of the '491 Patent.  For example, Defendants allege that the '491 Patent, similar to the '101 Patent and the Martinez Patent, claims a "two-way communication network" with "subscriber units" (or "subscriber terminals") dispersed throughout different geographic zones.  *See* Dkt. No. 423 ¶¶ 107-09; Dkt. No. 427 ¶ 111; Dkt. No. 156, Exhibit A.  IP Holdings has conceded as much by using in this action the Court's constructions of the claims of the '101 Patent from the SkyTel Action and another action involving the '101, but not the '491, Patent.  *See, e.g.,* Memorandum Opinion & Order, CA No. 6:08-cv-00385, Dkt. No. 431 at 24; Dkt. No. 492, Exhibit A.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the Motion.  In the alternative, should the Court grant the Motion, Defendants respectfully request that the Court enter an Order allowing Defendants fourteen days from the date thereof to amend their Pleadings in accordance with the Court's Order.

---

[18] IP Holdings' reliance on *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1322 (Fed. Cir. 1998) is misplaced.  *Baxter* involved a claim of infectious unenforceability of one divisional based on unenforceability of another divisional application—sibling applications.  The divisional applications resulted from the PTO's determination that the applications claimed unrelated subject matter.  That is not the case with the parent-child relation alleged by IP Holdings between the '101 and '491 Patents.

DATED: October 21, 2011                          Respectfully submitted,

                                    By:    /s/ Jennifer H. Doan
                                           Jennifer H. Doan
                                           Texas Bar No. 08809050
                                           HALTOM & DOAN
                                           6500 Summerhill Road, Suite 100
                                           Texarkana, TX 75503
                                           Tel:  (903) 255-1000
                                           Fax: (903) 255-0800
                                           jdoan@haltomdoan.com

                                           Henry B. Gutman (admitted *pro hac*)
                                           Victor Cole (Texas PRID No. 3354198)
                                           Courtney A. Welshimer (admitted *pro hac*)
                                           SIMPSON THACHER & BARTLETT LLP
                                           425 Lexington Avenue
                                           New York, NY 10017
                                           Tel:  (212) 455-2000
                                           Fax: (212) 455-2502
                                           hgutman@stblaw.com
                                           vcole@stblaw.com
                                           cwelshimer@stblaw.com

                                           Jeffrey E. Ostrow (admitted *pro hac*)
                                           SIMPSON THACHER & BARTLETT LLP
                                           2550 Hanover Street
                                           Palo Alto, CA 94304
                                           Tel:  (650) 251-5000
                                           Fax: (650) 251-5002
                                           jostrow@stblaw.com

                                           **COUNSEL FOR DEFENDANT
                                           CELLCO PARTNERSHIP D/B/A
                                           VERIZON WIRELESS**

By:     /s/*Jared Bobrow (with permission)*
        Jared Bobrow
        jared.bobrow@weil.com
        CA Bar No. 133712
        LEAD ATTORNEY
        Aaron Huang
        aaron.huang@weil.com
        CA Bar No. 261903
        Erin C. Jones
        erin.jones@weil.com
        CA Bar No. 252947
        WEIL, GOTSHAL & MANGES LLP
        201 Redwood Shores Parkway
        Redwood Shores, CA 94065
        Telephone: (650) 802-3000
        Facsimile: (650) 802-3100

        Amber H. Rovner
        amber.rovner@weil.com
        TX Bar No. 09223750
        WEIL, GOTSHAL & MANGES LLP
        700 Louisiana, Suite 1600
        Houston, TX 77002
        Telephone: (713) 546-5000
        Facsimile: (713) 224-9511

        Melissa Richards Smith
        Texas State Bar No. 24001351
        Gillam & Smith L.L.P.
        303 South Washington Avenue
        Marshall, TX 75670
        Telephone: (903) 934-8450
        Facsimile: (903) 934-9257
        E-mail: melissa@gillamsmithlaw.com

        **COUNSEL FOR SAMSUNG
        TELECOMMUNICATIONS AMERICA
        LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 21st day of October, 2011.


/s/ Jennifer H. Doan
 Jennifer H. Doan