UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS, LLC, | | |
| Plaintiff, | | CIVIL ACTION NO. 6:10-cv-379-LED |
| v. | | **JURY TRIAL REQUESTED** |
| T-MOBILE USA, INC., ET AL., | | |
| Defendants. | | |

**DEFENDANT-COUNTERCLAIMANT CELLCO PARTNERSHIP D/B/A VERIZON
WIRELESS' AMENDED ANSWER AND COUNTERCLAIMS TO
PLAINTIFF-COUNTERDEFENDANT EON CORP. IP HOLDINGS, LLC'S
FOURTH AMENDED COMPLAINT**

Defendant-Counterclaimant Cellco Partnership d/b/a Verizon Wireless ("Verizon

Wireless"), by and through its undersigned counsel, responds to Plaintiff-Counterdefendant EON

Corp. IP Holdings, LLC's ("IP Holdings") Fourth Amended Complaint for Patent Infringement

and Jury Demand ("Complaint") dated August 10, 2011 and further counterclaims as follows:

**PARTIES**

1.      Verizon Wireless lacks knowledge or information sufficient to form a belief as to

the truth of the allegations set forth in Paragraph 1, and, on that basis, denies them.

2.      Verizon Wireless lacks knowledge or information sufficient to form a belief as to

the truth of the allegations set forth in Paragraph 2, and, on that basis, denies them.

3.      Verizon Wireless lacks knowledge or information sufficient to form a belief as to

the truth of the allegations set forth in Paragraph 3, and, on that basis, denies them.

4.      Verizon Wireless lacks knowledge or information sufficient to form a belief as to

the truth of the allegations set forth in Paragraph 4, and, on that basis, denies them.

5.      Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5, and, on that basis, denies them.

6.      Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6, and, on that basis, denies them.

7.      Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7, and, on that basis, denies them.

8.      Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8, and, on that basis, denies them.

9.      Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9, and, on that basis, denies them.

10.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10, and, on that basis, denies them.

11.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11, and, on that basis, denies them.

12.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12, and, on that basis, denies them.

13.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13, and, on that basis, denies them.

14.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14, and, on that basis, denies them.

15.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15, and, on that basis, denies them.

16.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16, and, on that basis, denies them.

17.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17, and, on that basis, denies them.

18.     Verizon Wireless is a general partnership organized under the laws of the State of Delaware with its principal place of business at One Verizon Way, Basking Ridge, New Jersey 07920.   Verizon Wireless admits that it does business in Texas and denies the remaining allegations set forth in Paragraph 19 to the extent they relate to Verizon Wireless.

19.     The allegations set forth in Paragraph 19 of the Complaint do not require a response from Verizon Wireless.

## JURISDICTION AND VENUE

20.     Verizon Wireless admits that IP Holdings purports to bring this action under Title 35 of the United States Code.   Verizon Wireless admits that IP Holdings purports to ground subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).   Verizon Wireless admits that IP Holdings purports to base venue in this District upon 28 U.S.C. §§ 1391 and 1400(b).   The remaining allegations set forth in Paragraph 20 state a legal conclusion to which no response is required; to the extent any response is required, Verizon Wireless denies those allegations to the extent they relate to Verizon Wireless.

21.     Verizon Wireless admits that it is subject to jurisdiction in the State of Texas. The remaining allegations set forth in Paragraph 21 state a legal conclusion to which no response is required; to the extent any response is required, Verizon Wireless denies those allegations to the extent they relate to Verizon Wireless.

22.     Verizon Wireless admits that it is subject to personal jurisdiction in this Court. Verizon Wireless admits that it has appeared generally in this action and has answered IP Holdings' previous complaints.

23.     Verizon Wireless admits that it has conducted business within the State of Texas. Verizon Wireless denies that IP Holdings is being harmed in this District or anywhere as a result of any actions by Verizon Wireless.  The remaining allegations set forth in Paragraph 23 state a legal conclusion to which no response is required; to the extent any response is required, Verizon Wireless denies those allegations to the extent they relate to Verizon Wireless.

## THE PATENT-IN-SUIT

24.     Verizon Wireless admits that U.S. Patent No. 5,592,491 (the "'491 patent") was issued by the United State Patent and Trademark Office and is entitled "Wireless Modem". Verizon Wireless admits that the '491 patent states that it is a continuation-in-part of U.S. Patent No. 5,388,101.  Verizon Wireless denies the remaining allegations set forth in Paragraph 24.

## GENERAL ALLEGATIONS

25.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 25, and, on that basis, denies them.

26.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26, and, on that basis, denies them.

27.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 27, and, on that basis, denies them.

28.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28, and, on that basis, denies them.

29.     Verizon Wireless denies the allegations set forth in Paragraph 29.

30.     Verizon Wireless denies the allegations set forth in Paragraph 30.

31.     Verizon Wireless denies the allegations set forth in Paragraph 31.

32.     Verizon Wireless denies the allegations set forth in Paragraph 32.

33.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 33, and, on that basis, denies them.

34.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 34, and, on that basis, denies them.

35.     Verizon Wireless denies the allegations set forth in Paragraph 35 to the extent they relate to Verizon Wireless.  Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 35, and, on that basis, denies them.

36.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 36, and, on that basis, denies them.

37.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 37, and, on that basis, denies them.

38.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 38, and, on that basis, denies them.

39.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 39, and, on that basis, denies them.

40.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 40, and, on that basis, denies them.

41.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 41, and, on that basis, denies them.

42.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 42, and, on that basis, denies them.

43.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 43, and, on that basis, denies them.

44.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 44, and, on that basis, denies them.

45.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 45, and, on that basis, denies them.

46.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 46, and, on that basis, denies them.

47.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 47, and, on that basis, denies them.

48.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 48, and, on that basis, denies them.

49.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49, and, on that basis, denies them.

50.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 50, and, on that basis, denies them.

51.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 51, and, on that basis, denies them.

52.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 52, and, on that basis, denies them.

53.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 53, and, on that basis, denies them.

54.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 54, and, on that basis, denies them.

55.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 55, and, on that basis, denies them.

56.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 56, and, on that basis, denies them.

57.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 57, and, on that basis, denies them.

58.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 58, and, on that basis, denies them.

59.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 59, and, on that basis, denies them.

60.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 60, and, on that basis, denies them.

61.     Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 61, and, on that basis, denies them.

## RESPONSE TO "PATENT INFRINGEMENT" ALLEGATIONS

62.     Verizon Wireless repeats and realleges its responses to IP Holdings' allegations set forth in Paragraphs 1-61 as if fully set forth herein.

63.     Verizon Wireless denies the allegations set forth in Paragraph 63 to the extent they relate to Verizon Wireless.

64.     Verizon Wireless denies the allegations set forth in Paragraph 64 to the extent they relate to Verizon Wireless.

65.     The allegations set forth in Paragraph 65 state a legal conclusion to which no response is required; to the extent any response is required, Verizon Wireless lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 65 and, on that basis, denies them.

66.     Verizon Wireless denies the allegations in Paragraph 66 to the extent they relate to Verizon Wireless.

67.     Verizon Wireless denies the allegations in Paragraph 67 to the extent they relate to Verizon Wireless.

68.     Verizon Wireless denies the allegations in Paragraph 68 to the extent they relate to Verizon Wireless.

69.     Verizon Wireless denies all allegations not specifically admitted herein.

## RESPONSE TO IP HOLDINGS' PRAYER FOR RELIEF

70.     Paragraphs A through I of the Complaint set forth the statement of relief requested by IP Holdings, to which no response is required.  To the extent any response is required, Verizon Wireless denies that IP Holdings is entitled to any of the requested relief and denies any allegations contained therein as they relate to Verizon Wireless.  To the extent Paragraphs A through I of the Complaint contain factual allegations, Verizon Wireless denies them to the extent they relate to Verizon Wireless.

## JURY DEMAND

71.     Verizon Wireless denies that IP Holdings is entitled to a trial by jury except as permitted by law.

## DEFENSES

72.     Verizon Wireless, as further and separate defenses to the Complaint and without assuming any burden it would not otherwise have, alleges, upon information and belief, the following defenses:

### FIRST DEFENSE
### (Lack of Standing)

73.     Upon information and belief, IP Holdings lacks standing to bring this suit.

### SECOND DEFENSE
### (Failure to State a Claim)

74.     Each and every one of IP Holdings' claims for relief and each and every one of its allegations fail to state a claim upon which any relief may be granted against Verizon Wireless.

### THIRD DEFENSE
### (Non-Infringement)

75.     Verizon Wireless has not and does not infringe, willfully or otherwise, jointly, directly and/or indirectly, including, without limitation, through inducement and/or contributory infringement, any valid and enforceable claim of the '491 Patent, literally, under the doctrine of equivalents, or otherwise.

### FOURTH DEFENSE
### (No Joint Infringement)

76.     Verizon Wireless has not and does not infringe any valid and enforceable claim of the '491 Patent under any theory of joint infringement.  *See, e.g., Golden Hour Data Systems, Inc. v. emsCharts, Inc. and Softtech*, 614 F.3d 1367 (Fed. Cir. 2010); *Muniauction, Inc. v. Thomson Corp.,* 523 F.3d 1318 (Fed. Cir. 2008); *BMC Resources, Inc. v. Paymentech, L.P.,*  498 F.3d 1373 (Fed. Cir. 2007).

## FIFTH DEFENSE
### (Invalidity)

77.     The '491 Patent is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including, without, limitation, 35 U.S.C. §§ 101, 102, 103, 112, 116, 120, and 255 and the rules, regulations and laws pertaining thereto.

## SIXTH DEFENSE
### (Unenforceability)

78.     The '491 Patent is unenforceable due to the doctrine of estoppel, IP Holdings' acts, failure to act, omissions, deceptive intent, and/or inequitable conduct during the prosecution of the '491 Patent application and/or related patent applications.

79.     The '491 Patent is unenforceable because one or more persons involved in the prosecution of the application that issued as the '491 Patent, in particular, its sole listed inventor Gilbert M. Dinkins ("Dinkins") and/or prosecuting attorney Patrick T. King ("King") committed inequitable conduct by deliberately withholding one or more known material prior art references from the Patent and Trademark Office (the "PTO") during the prosecution of the '491 Patent and related patents. *Therasense, Inc. v. Becton, Dickinson & Co.*, No. 2008-1511, 2011 WL 2028255, at *9 (Fed. Cir. May 25, 2011) ("In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material references.") (emphasis in original) (citing *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995)).

80.     In one instance of inequitable conduct, Dinkins deliberately withheld from the PTO his own earlier patent U.S. Pat. No. 4,659,878 (the "'878 Patent") and prior art cited therein.  The '878 Patent lists Dinkins as its sole inventor.  The '878 Patent, entitled "Method And Apparatus For Interference Free Communications Between A Remote Handset And A Host

Subscriber Unit In A Cellular Radio Telephone," issued on April 21, 1987, more than seven years before the application that issued as the '491 Patent was filed on December 2, 1994, and is therefore prior art to the '491 Patent.

81.     Just like the '491 Patent, the '878 Patent is directed to wireless communication networks, discloses and claims a similar subject matter, and therefore contains information material to the patentability of the claims of the '491 Patent.   In particular, the '878 Patent discloses a digital cellular radio telephone system that includes a base station and digital low-power mobile units that transmit a digital subscriber address and called number over RF link ('878 Patent, Figs. 3 and 6, col. 1, ll. 9-10, 15-18).   The '878 Patent discloses a handset and mobile wireless subscriber unit that are similar to the '491 Patent's subscriber unit and base station, respectively.   The subscriber unit operates as an "rf repeater."   ('878 Patent, col. 6, ll. 33-36).   The '878 Patent discloses communication between the handset and subscriber unit within a wireless cellular system based on the availability of clear frequencies ('878 Patent, col. 1, ll. 45-53, 58-62, col. 6, ll. 18-21).   As illustrated in the claim chart of Exhibit B1 to Defendants' Invalidity Contentions served April 29, 2011, which are hereby incorporated by reference in their entirety, the '878 Patent anticipates or renders obvious all asserted claims of the '491 Patent.

82.     The information in the '878 Patent was "but-for material" to the examination of the patent application that issued as the '491 Patent because the PTO would not have allowed one or more claims of the '491 Patent had it been aware of the '878 Patent.   *Therasense,* 2011 WL 2028255, at *11 ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.").

83.     The information contained in the '878 Patent is not cumulative to the information that was before the PTO during prosecution of the '491 Patent.  For example, during the prosecution of the '491 Patent the applicant added what is now claim 5 and argued that it was allowable because it

> "pertains to a method of communicating between a subscriber unit and a local base station repeater cell.  The communication path between these elements is altered depending on whether the subscriber unit is receiving a signal from the local base station repeater cell.  Applicant respectfully submits that the cited references do not teach or suggest [such a] method of communicating between [] a subscriber unit and a local base station repeater cell in a communication network."

(April 3, 1996 Amendment and Response at 14).  Because the '878 Patent discloses a method of communication between a mobile handset and a wireless mobile subscriber unit where the communication path is altered depending on whether the subscriber unit is receiving a proper signal, it is not cumulative of the prior art before the PTO during prosecution of the '491 Patent. (*See* '878 Patent, Figs. 3 and 7).

84.     As the sole listed inventor of the '491 Patent as well as the '878 Patent, Dinkins knew that the '878 Patent was prior art, knew that the '878 Patent was but-for material to the patentability of one or more claims of the '491 Patent, and made a deliberate decision to withhold it from the PTO thereby committing inequitable conduct rendering the '491 Patent unenforceable.

85.     The single most reasonable inference that can be drawn from the evidence is that Dinkins' failure to disclose the '878 Patent to the PTO was done with the specific intent to deceive the PTO.  This amounts to inequitable conduct rendering the '491 Patent unenforceable.

86.     Alternatively, or in addition, the '491 Patent is unenforceable under the doctrine of infectious unenforceability due to IP Holdings' acts, failure to act, omissions, deceptive intent, and/or inequitable conduct during the prosecution of U.S. Pat. No. 5,388,101 ("the '101

Patent'"), to which, as IP Holdings asserts, the '491 Patent claims priority as a continuation-in-part.  (*Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006) (affirming the district court's finding of inequitable conduct stemming from inequitable conduct in a parent application) (*citing Fox Indus., Inc. v. Structural Pres. Sys., Inc.*, 922 F.2d 801 (Fed. Cir. 1990); *see also Therasense*, 2011 WL 2028255 at *8 (Fed. Cir. May 25, 2011) ("Moreover, the taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family."); *id.* at *12 (noting that "inequitable conduct renders an entire patent (or even a patent family) unenforceable")).  At least to the extent that IP Holdings asserts that the '491 Patent is related to and/or entitled to priority based on the '101 Patent, any inequitable conduct that renders the '101 Patent unenforceable also renders the '491 Patent unenforceable via infectious unenforceability and/or unclean hands.

87.    With respect to the '101 Patent, King committed inequitable conduct by deliberately withholding a known material prior art reference that was cited in an International Search Report ("ISR") for a Patent Cooperation Treaty ("PCT") counterpart of the '101 Patent, WO 94/10803, in particular U.S. Pat. No. 4,928,177 (the "Martinez Patent"). (*Therasense,* 2011 WL 2028255, at *9).

88.    King acted as the prosecuting attorney for the '101 Patent and the WO 94/10803 PCT application.  ('101 Patent at [56]).

89.    As a patent attorney with 35 years of experience who has prosecuted several hundred patent applications, King was familiar with the duty of candor and disclosure owed to the PTO.  (USPTO Registration for Patrick T. King; List of United States Patents prosecuted by Patrick T. King).

90.     The WO 94/10803 PCT application included a set of 34 claims that were identical to the claims of the '101 Patent application, as initially filed with the PTO, including a numbering oddity wherein Claim 29 was repeated.

91.     On March 16, 1994, during the prosecution of the WO 94/10803 PCT application, the PCT examiner identified several prior art references in an International Search Report ("ISR") for the PCT Application, including, in particular, the Martinez Patent.

92.     The Martinez Patent was specifically identified in the ISR as a so-called "Y" reference denoting a "document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents such combination being obvious to a person skilled in the art."

93.     The Martinez Patent was issued on May 22, 1990, more than a year prior to the filing of the '101 Patent application, and thus qualified as prior art under 35 U.S.C. § 102(b) for the '101 Patent.

94.     The "Notification of Transmittal of the International Search Report or the Declaration" that included the ISR that cited the Martinez Patent as a "Y" reference, was mailed to Patrick T. King on March 30, 1994 before the issuance of the '101 Patent.

95.     The "Notification of Transmittal of the International Search Report or the Declaration" included a notice to the applicant that they were "entitled, if [] so wishe[d]," to amend the claims of the WO 94/10803 PCT application under Article 19.  (*Id.*)

96.     Generally, an applicant may only amend a PCT application under Article 19 of the Patent Cooperation Treaty after an ISR is issued in the prosecution of the PCT application, within two months of the issuance of the same.  (M.P.E.P. § 1853; *see also* M.P.E.P., Appendix T, Article 19).

97.     King mailed an amendment of claims of the WO 94/10803 PCT application to the European Patent Office that was received on May 24, 1994.

98.     In support of the amendment of claims of the WO 94/10803 PCT application under Article 19, the applicant submitted a "Statement Under Article 19" certifying that the amendment of claims was authorized under Article 19.  (*Id.*)

99.     At the time King received the ISR, claim 1 in the '101 Patent application and claim 1 in the WO 94/10803 PCT application differed in only one respect—claim 1 of the '101 Patent application was amended by removing a clause to overcome the lack of antecedent basis and indefiniteness rejections, not to overcome any prior art.  (February 4, 1994 Amendment and Response to Office Action).  Moreover, King amended the claims of the WO 94/10803 PCT application by his Article 19 amendment by similarly removing the language challenged as lacking antecedent basis and as being indefinite from claim 1 of the WO 94/10803 PCT application.  (*Id.*)

100.    King then deliberately withheld the ISR and the Martinez Patent from the PTO during the prosecution of the '101 Patent.

101.    The Martinez Patent cited in the ISR was considered by the PTO for the first time in the recent *ex parte* reexamination of the '101 Patent.

102.    On January 9, 2009, a third-party requested *ex parte* reexamination[1] of the '101 Patent due to substantial new questions of patentability based upon, *inter alia*, the Martinez

---

[1]  The Request for Reexamination of the '101 Patent and all related proceedings and filings are hereby incorporated by reference in their entirety.

Patent.  (Information Disclosure Statement by Requestor of *Ex Parte* Reexamination of the '101 Patent).

103.    After granting the request for *ex parte* reexamination of the '101 Patent, the PTO mailed a non-final office action on August 7, 2009, rejecting all claims of the '101 Patent as anticipated or obvious over, *inter alia*, the Martinez Patent.  ('101 Patent Non-Final Office Action at 3, 14-18).

104.    On May 10, 2010, the PTO mailed a final office action in the *ex parte* reexamination of the '101 Patent, rejecting claim 19 of the '101 Patent under 35 U.S.C. § 102(b) as anticipated by the Martinez Patent, and rejecting claims 19 and 20 under 35 U.S.C. § 103(a) as rendered obvious over by, *inter alia*, the Martinez Patent.  ('101 Patent Final Office Action at 5). That final rejection is now on appeal.

105.    In determining whether to grant a reexamination, the PTO must consider all prior art of record to determine if the new prior art reference is not "merely cumulative to similar prior art already fully considered by the Office."  (M.P.E.P. § 2242 (listing criteria for deciding *ex parte* reexamination requests)).

106.    The Martinez Patent is not cumulative to the information that was before the Examiner during prosecution of the '101 Patent as demonstrated by the consideration of the Martinez Patent in the *ex parte* reexaminations of the '101 Patent, the initial rejection of claims of the '101 Patent over it as anticipated or rendered obvious, and the final rejection of claims 19 and 20 of the '101 Patent as anticipated by the Martinez Patent or rendered obvious by, *inter alia*, the Martinez Patent.

107.    During the prosecution of the '101 Patent, the only Martinez patent the PTO considered was U.S. Patent 5,177,604 ("Martinez '604"), which was a divisional of U.S. Patent

4,750,036 ("Martinez '036").  IP Holdings argued in the reexamination proceedings that the disclosure of the Martinez Patent was not cumulative to the disclosure of Martinez '036.  (Oct. 7, 2009 Response to Office Action in *ex parte* reexamination of the '101 Patent, at 24-25 ("[a]lthough the Martinez '177 and the Martinez '036 patents are from the same inventor, they [disclose] radically different approaches"); Declaration of Dr. Kesan dated October 7, 2009, at ¶ 12 ("The Martinez '177 and Martinez '036 patents employ different approaches . . .")). If, as IP Holdings told the PTO, the disclosure of the Martinez Patent discloses a "radically different approach[]", it is not cumulative.

108.    The Martinez Patent was but-for material to the patentability of at least claims 19 and 20 of the '101 Patent because the PTO would not have allowed at least these two claims had it been aware of the Martinez Patent.  This fact is confirmed  by the initial rejection of all claims of the '101 Patent during reexamination over the Martinez Patent as anticipated or rendered obvious, and the final rejection of claim 19 of the '101 Patent during reexamination as anticipated by the Martinez Patent, and claims 19 and 20 as rendered obvious in view of the Martinez Patent.

109.    As the prosecuting attorney for both the '101 Patent and the WO 94/10803 PCT application, King knew of the Martinez reference, knew that it was but-for material to the patentability of one or more claims of the '101 Patent, and made a deliberate decision to withhold it from the PTO, thereby committing inequitable conduct rendering the '491 Patent unenforceable under the doctrine of infectious unenforceability.  (*Therasense,* 2011 WL 2028255, at *9, 11, 12).

110.    The single most reasonable inference that can be drawn from the failure to disclose the Martinez Patent, which was indisputably known to King and is indisputably

material, is that King acted with specific intent to deceive the PTO to obtain issuance of the '101 Patent.

111.    At least according to IP Holdings' own allegations, contentions and assertions made in this action, the inequitable conduct underlying IP Holdings' prosecution of the '101 Patent bears an immediate and necessary relation to IP Holdings' enforcement of the '491 Patent. First, IP Holdings has alleged that the '101 Patent and the '491 Patent are closely related to each other by asserting that the '491 Patent is a continuation-in-part of the '101 Patent and claims priority to the '101 Patent.  At least to the extent that IP Holdings asserts that the '491 Patent is entitled to priority based on the '101 Patent, the inequitable conduct underlying IP Holdings' prosecution of the '101 Patent bears an immediate and necessary relation to IP Holdings' enforcement of the '491 Patent.  Second, the '491 Patent effectively describes the '101 Patent as the foundation upon which the '491 Patent was built.  *E.g.*, '491 Patent (Exhibit A to Complaint) at Col. 3:7-31.  Thus, because the Martinez Patent was "but-for" material to prosecution of the '101 Patent, the Martinez Patent also bears an "immediate and necessary relation" to any purported inventions claimed in the '491 Patent, and as a result, the inequitable conduct underlying IP Holdings' prosecution of the '101 Patent bears an immediate and necessary relation to IP Holdings' enforcement of the '491 Patent.  This is further illustrated by the fact that the '491 Patent, similar to the systems described in the '101 Patent and the Martinez Patent, claims a "two-way communication network" with "subscriber units" (or "subscriber terminals") dispersed throughout different geographic zones.  There is also a significant overlap between the

claim terms used in both the '101 Patent and the '491 Patent.[2]  At least to the extent IP Holdings contends that some of these terms (*e.g.,* "synchronously related") should be construed as they were in the '101 Patent,[3] which Verizon Wireless denies, such a contention further confirms that the inequitable conduct underlying IP Holdings' prosecution of the '101 Patent bears an immediate and necessary relation to IP Holdings' enforcement of the '491 Patent.  Therefore, the inequitable conduct that renders the '101 Patent unenforceable in light of the knowing and intentional failure to disclose the Martinez Patent to the PTO also renders the '491 Patent unenforceable via infectious unenforceability.

112.    The aforementioned acts also evidence a pattern of inequitable conduct by deliberate withholding of noncumulative information but-for material to the patentability of the '101 Patent and/or the '491 Patent.  (*See, e.g., Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1235 (Fed. Cir. 2007) (deceptive intent can be inferred from a pattern of "mistakes" or "oversights" that conceal material information from the PTO)).

113.    Because discovery in this case has just commenced, Verizon Wireless continues to investigate the allegations set forth in the Complaint and reserves the right to supplement or amend this defense if any additional information is discovered.

---

[2] Claim terms common to both patents include, *inter alia*: "network hub switching center;" "predetermined geographic area;" "cell;" "identified individual subscriber units;" "base station broadcast signal;" "digital data messages;" "multiplexed synchronously related digital data messages;" "cell subdivision sites;" "synchronously related to [a] base station broadcast signal;" "cell site;" "individual identified subscriber units" ("identified individual subscriber units"); and "predetermined base station geographic area."

[3] *See, e.g.,* Appendix L to IP Holdings' 3-1 Disclosure of Asserted Claims and Infringement Contentions dated January 28, 2011 at 6, 7 (construing "synchronously related" as "related in time and/or frequency"); *EON Corp. IP Holdings, LLC v. Verizon Clinton Center Drive Corp.*, CA No. 6:08-cv-00385-LED, Dkt. No. 431 at 24 (same).

**SEVENTH DEFENSE**
**(Claims Barred)**

114.    IP Holdings' claims are barred, in whole or in part, due to prosecution history estoppel and/or prosecution history disclaimer.

**EIGHTH DEFENSE**
**(Limitations on Damages and Costs)**

115.    IP Holdings failed to provide adequate notice to Verizon Wireless of alleged infringement and, thus, is barred under 35 U.S.C. § 287 from recovering damages prior to the date of the filing of this lawsuit.   IP Holdings is precluded from recovering damages from Verizon Wireless for any alleged infringement committed more than six years prior to the filing of this lawsuit under 35 U.S.C. § 286.  IP Holdings is barred by 35 U.S.C. § 288 from recovering any costs associated with its action.

**NINTH DEFENSE**
**(Prosecution History Estoppel)**

116.    Based on statements, representations, admissions, and/or other conduct during the prosecution of the '491 Patent application and/or related patent applications, and reexaminations of related patents, IP Holdings is estopped from asserting any interpretation of the claims of the '491 Patent that would cover any of Verizon Wireless' allegedly infringing products and/or services.

**TENTH DEFENSE**
**(Double Patenting)**

117.    The claims of the '491 Patent are invalid and/or unenforceable under 35 U.S.C. § 101 and/or the judicially-created doctrine of obviousness-type double patenting.

## ELEVENTH DEFENSE
### (Equitable Defenses)

118.    IP Holdings' claims are barred, in whole or in part, under principles of equity, including laches, prosecution laches, waiver, estoppel, unclean hands, and/or other equitable theories because IP Holdings, the inventors, and/or previous owners or assignees of the '491 Patent knew for many years of the basis for the allegations they now assert but unreasonably delayed in bringing this action, and because IP Holdings had become aware of prior art invalidating the '491 Patent and/or of acts, omissions, statements, or circumstances rendering the '491 Patent unenforceable, but nevertheless proceeded to assert the invalid and unenforceable patent in this action.

## TWELFTH DEFENSE
### (Adequate Remedy at Law)

119.    IP Holdings is not entitled to injunctive relief because any alleged injury to IP Holdings is not immediate or irreparable and IP Holdings has an adequate remedy at law.

## THIRTEENTH DEFENSE
### (IP Holdings Cannot Prove Exceptional Case)

120.    IP Holdings cannot prove that this is an exceptional case justifying an award of attorney fees against Verizon Wireless pursuant to 35 U.S.C. § 285 because Verizon Wireless has not infringed and does not infringe, willfully or otherwise, any valid and enforceable claim of the '491 Patent.  None of the allegations asserted in the Second Amended Complaint support a finding of willful infringement as defined by *In re Seagate Tech., LLC*, 487 F.3d 1360, 1366 (Fed. Cir. 2007).  Accordingly, IP Holdings cannot recover for willful infringement.

121.    IP Holdings' requests for relief for a finding of willful infringement, a finding that this case is exceptional, and an award of treble damages and attorneys' fees fail to state a claim upon which relief can be granted because IP Holdings has failed to allege the requisite facts.

122.    IP Holdings' requests for relief for a finding of willful infringement, a finding that this case is exceptional, and an award of treble damages and attorneys' fees are barred because Verizon Wireless did not act with the requisite objective recklessness.

## FOURTEENTH DEFENSE
### (Government Sales)

123.    To the extent that certain products and/or services accused of infringing the '491 Patent are used by and/or manufactured for the United States Government, IP Holdings' claims against Verizon Wireless with respect to such products and/or services are barred, in whole or in part, under 28 U.S.C. § 1498.

## FIFTEENTH DEFENSE
### (Dedication to the Public)

124.    IP Holdings' claims are barred, in whole or in part, because embodiments not literally claimed in the '491 Patent were dedicated to the public.

## SIXTEENTH DEFENSE
### (Patent Misuse)

125.    Upon information and belief, IP Holdings' claims are barred, in whole or in part, because of patent misuse.

## SEVENTEENTH DEFENSE
### (Failure to Join Necessary and/or Indispensable Parties)

126.    IP Holdings has failed to join necessary and/or indispensable parties in the present action as required by the Federal Rules of Civil Procedure.

## EIGHTEENTH DEFENSE
### (Improper Joinder)

127.    Some or all of the defendants have been improperly joined in a single action and Verizon Wireless asserts its right to a separate trial.

## NINETEENTH DEFENSE
### (Improper/Inconvenient Venue)

128.    This action should be dismissed and/or transferred pursuant to improper venue as well as under the doctrine of *forum non conveniens*.

## TWENTIETH DEFENSE
### (Intervening Rights)

129.    IP Holdings' claims against Verizon Wireless that are based upon any asserted claims of the '491 Patent purportedly amended by a Certificate of Correction dated November 17, 2009 are barred, in whole or in part, under 35 U.S.C. § 255 and/or under all applicable intervening rights doctrines.

## TWENTY-FIRST DEFENSE
### (Certificate of Correction Invalid)

130.    The Certificate of Correction dated November 17, 2009 for the '491 Patent is invalid for failure to satisfy one or more conditions set forth in 35 U.S.C. § 255.

## COUNTERCLAIMS

Without waiver of any rights, including the right to seek dismissal and/or transfer of this action, Verizon Wireless, by and through its undersigned counsel, and by way of Counterclaims against IP Holdings, alleges:

## PARTIES

1.    Defendant-Counterclaimant Verizon Wireless is a General Partnership organized under the laws of the State of Delaware with its principal place of business at One Verizon Wireless Way, Basking Ridge, New Jersey 07920.

2.    Upon information and belief, Plaintiff-Counterdefendant IP Holdings is a limited liability company organized under the laws of the State of Texas with its principal place of business located at 719 W. Front Street, Suite 108, Tyler, Texas 75702.

## JURISDICTION AND VENUE

3.      These counterclaims arise under the United States patent laws, 35 U.S.C. § 1, et seq., and seek relief for which this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391.

5.      IP Holdings has sued Verizon Wireless for patent infringement of the '491 Patent. Verizon Wireless denies that IP Holdings has standing to bring this action, denies infringement and denies that the '491 Patent is valid or enforceable. There is therefore a substantial, actual, and continuing controversy between IP Holdings and Verizon Wireless as to the propriety of this action and as to the infringement, validity and enforceability of the '491 Patent.

6.      IP Holdings has consented to personal jurisdiction in this District by commencing therein its action for patent infringement against Verizon Wireless.

## FIRST COUNTERCLAIM
## (Declaratory Judgment That IP Holdings Lacks Standing)

7.      Verizon Wireless repeats and realleges each allegation set forth in Paragraphs 1 through 6 as though fully set forth herein.

8.      Upon information and belief, IP Holdings is not the assignee of all rights, title, and interest in and to the '491 Patent and does not possess all rights of recovery under the '491 Patent, including the right to recover damages for past infringement, and, therefore, IP Holdings lacks standing to bring this suit.

9.      A judicial declaration that IP Holdings is not the assignee of all rights, title, and interest in and to the '491 Patent and does not possess all rights of recovery under the '491 Patent, including the right to recover damages for past infringement, is necessary and appropriate

at this time so that Verizon Wireless can ascertain its rights and duties with respect to the products and/or services that IP Holdings accuses of infringing the '491 Patent.

## SECOND COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement)

10.     Verizon Wireless repeats and realleges each allegation set forth in Paragraphs 1 through 9 as though fully set forth herein.

11.     Verizon Wireless has not infringed and does not infringe any valid and enforceable claim of the '491 Patent, either jointly, directly or indirectly, literally, under the doctrine of equivalents, or otherwise.

12.     Verizon Wireless has not contributorily infringed or induced to infringe, and does not contributorily infringe or induce to infringe, any valid and enforceable claim of the '491 Patent.

13.     A judicial declaration that Verizon Wireless has not infringed and does not infringe the '491 Patent is necessary and appropriate at this time so that Verizon Wireless can ascertain its rights and duties with respect to the products and/or services that IP Holdings accuses of infringing the '491 Patent.

## THIRD COUNTERCLAIM
### (Declaratory Judgment of Invalidity)

14.     Verizon Wireless repeats and realleges each allegation set forth in Paragraphs 1 through 13 as though fully set forth herein.

15.     The '491 Patent is invalid under the provisions of 35 U.S.C. § 101, et seq., including, without limitation, §§ 102, 103, and 112.

16.     A judicial declaration that the '491 Patent is invalid because it fails to satisfy the conditions for patentability specified in Title 35 of the United States Code is necessary and

appropriate at this time so that Verizon Wireless can ascertain its rights and duties with respect to the products and/or services that IP Holdings accuses of infringing the '491 Patent.

## FOURTH COUNTERCLAIM
### (Declaratory Judgment of Unenforceability)

17.     Verizon Wireless repeats and realleges each allegation set forth in Paragraphs 1 through 16 as though fully set forth herein.

18.     The '491 Patent is unenforceable due to the doctrine of estoppel, IP Holdings' acts, failure to act, omissions, deceptive intent, and/or inequitable conduct during the prosecution of the '491 Patent application and/or related patent applications. For the basis of this counterclaim, Verizon Wireless incorporates by reference paragraphs 78-113 of its Sixth Defense herein.

19.     A judicial declaration that the '491 Patent is unenforceable is necessary and appropriate at this time so that Verizon Wireless can ascertain its rights and duties with respect to the products and/or services that IP Holdings accuses of infringing the '491 Patent.

## EXCEPTIONAL CASE

20. This is an exceptional case against IP Holdings under 35 U.S.C. § 285.

## RESERVATION OF ADDITIONAL COUNTERCLAIMS

21.     As discovery in this case has not yet commenced, and as Verizon Wireless continues to investigate the allegations set forth in the Complaint, Verizon Wireless specifically gives notice that it intends to assert additional counterclaims as may become available by law, statute, or upon discovery in this case.  As such, Verizon Wireless hereby reserves the right to amend its Answer and to assert such additional counterclaims as allowed by the Federal and Local Rules.

## PRAYER FOR RELIEF

WHEREFORE, Verizon Wireless respectfully requests judgment granting the following relief:

A.      That IP Holdings take nothing by its Complaint;

B.      That the Court dismiss each and every claim related to Verizon Wireless in IP Holdings' Complaint with prejudice;

C.      That the Court declare that Verizon Wireless has not infringed, jointly, directly and/or indirectly, willfully or otherwise, any claim of the patent-in-suit;

D.      That the Court declare each claim of the patent-in-suit to be invalid under 35 U.S.C. § 1 *et seq*.;

E.      That the Court declare each claim of the patent-in-suit to be unenforceable;

F.      That the Court enter a permanent injunction restraining IP Holdings and its officers, partners, employees, agents, parents, subsidiaries, and affiliates, and any other persons acting on its behalf or in concert with it, from suing or threatening to sue for infringement of the patent-in-suit on the basis of the making, using, selling, offering for sale, or importing of any Verizon Wireless product or service;

G.      That the Court find that this case is an exceptional case under 35 U.S.C. § 285;

H.      That the Court award Verizon Wireless attorneys' fees and costs against IP Holdings pursuant to 35 U.S.C. § 285; and

I.      That the Court award Verizon Wireless any other relief the Court may deem just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) and L.R. 38, Verizon Wireless demands a trial by jury on all issues so triable.

DATED: June 8, 2012

Respectfully submitted,

By:  /s/ *Shawn A. Latchford*
Jennifer H. Doan
Texas Bar No. 08809050
Shawn A. Latchford
Texas Bar No. 24066603
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Tel:  (903) 255-1000
Fax: (903) 255-0800
jdoan@haltomdoan.com
slatchford@haltomdoan.com

Henry B. Gutman (admitted pro hac)
Victor Cole (Texas PRID No. 3354198)
Courtney A. Welshimer (admitted pro hac)
Kate Dominguez (admitted pro hac)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel:  (212) 455-2000
Fax: (212) 455-2502
hgutman@stblaw.com
vcole@stblaw.com
cwelshimer@stblaw.com
kdominguez@stblaw.com

Jeffrey E. Ostrow (admitted *pro hac*)
SIMPSON THACHER & BARTLETT LLP
2550 Hanover Street
Palo Alto, CA 94304
Tel:  (650) 251-5000
Fax: (650) 251-5002
jostrow@stblaw.com

**ATTORNEYS FOR DEFENDANT CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS**

## CERTIFICATE OF SERVICE

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 8th day of June, 2012.  Any other counsel of record will be served via first class U.S. mail.

/s/ *Shawn A. Latchford* _____
Shawn A. Latchford